UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REBECCA JANE ROUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17 CV 2511 DDN |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Rebecca Jane Rouse for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff Rebecca Jane Rouse, who was born on October 27, 1959, filed her application for disability insurance benefits on December 27, 2010. (Tr. 168-69.) She alleged a disability onset date of February 1, 2005, later amended to October 27, 2009 (Tr. 181), due to depression, neuropathy, post-surgery neck numbness, insulin-dependent diabetes, and bilateral carpal tunnel syndrome. (Tr. 186.) Her application was initially approved by an agency attorney advisor on September 8, 2011 (Tr. 86-94), but on April 24, 2012, the Appeals Council vacated the order approving benefits and remanded for further proceedings before an Administrative Law Judge (ALJ). (Tr. 99-103.)

Plaintiff appeared before an ALJ. (Tr. 36-68.) On July 23, 2013, following the hearing, the ALJ denied plaintiff's application. (Tr. 10-30.) On January 7, 2015, the Appeals Council denied plaintiff's request for review. (Tr. 1-4.)

Plaintiff filed a complaint with this Court under 42 U.S.C. § 405(g). *Rouse v. Colvin*, No. 4:15 CV 466 CEJ, 2016 WL 866087 (E.D. Mo. Mar. 7, 2016). On March 7, 2016, this Court reversed the ALJ's decision and remanded the case for further evaluation. *Id*. at 24. On August 1, 2017, following a second hearing, the ALJ found that plaintiff was not disabled and denied her application for disability benefits. (Tr. 758-84.) The Appeals Council did not review the new ALJ decision and it became the final decision of the Commissioner now before this Court for review. 20 C.F.R. § 404.984(d).

## II.

## III. MEDICAL HISTORY

The Court adopts the parties' several statements of uncontroverted material facts (Docs. 19, 24.) These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## IV. DECISION OF THE ALJ

On August 1, 2017, following a remand by this Court, a second ALJ issued the decision now before the Court. At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from her alleged disability onset date of October 27, 2009, through her date she was last insured on December 31, 2011. (Tr. 758-91.) At Step Two, the ALJ found that plaintiff had the severe impairments of diabetes mellitus, status post cervical degenerative disc disease and fusion, status post carpal tunnel surgery, depression, and anxiety. At Step Three, the ALJ found that plaintiff had no impairments or combination of impairments that met or was the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 764-68); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ then found that plaintiff:

had the residual functional capacity [(RFC)] to perform light work as defined in 20 CFR 404.1567(b) except she can sit for four hours at a time up to eight hours in an eight-hour workday; can stand and/or walk for one hour at a time up to three hours in an eight-hour workday; can occasionally reach overhead with both upper extremities; can frequently reach in all other directions; can frequently handle, finger, feel, push, and pull; can frequently operate foot controls with both lower extremities; can occasionally climb stairs and ramps but never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, and crouch, but never crawl; cannot be exposed to unprotected heights; can be occasionally exposed to moving mechanical parts and extreme cold; can be frequently exposed to humidity and wetness, dust, odors, fumes, and other pulmonary irritants; can be frequently exposed to extreme heat and vibration; and can frequently operate a motor vehicle. Finally plaintiff is limited to unskilled work (simple, routine, and repetitive tasks).

(Tr. 768.)

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work. (Tr. 782.) At Step Five, the ALJ found that plaintiff was capable of performing jobs existing in significant numbers in the national economy. (Tr. 783-84.)

## V. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not be reversed merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pates-Fires*, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant has the RFC *See* to perform her past relevant work (PRW). *Id*. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id*.; 20 C.F.R. § 404.1520(a)(4(v).

## VI. DISCUSSION

Plaintiff argues that the second ALJ erred (1) in failing to make a prima facie finding of disability based on her RFC assessment and Grid Rule 201.14, and (2) in formulating plaintiff's RFC, claiming it is not supported by substantial evidence because the ALJ failed to properly consider plaintiff's diabetic neuropathy in her legs as a severe impairment at Step Two.

### A. Grid Rule 201.14

Plaintiff argues that the ALJ erred in failing to make a prima facie finding of disability based on plaintiff's RFC. Specifically, plaintiff contends that, because the ALJ determined plaintiff could only "stand and/or walk for one hour at a time up to three hours in an eight-hour workday" (Tr. 768), the ALJ should have concluded that plaintiff is limited to sedentary work, and thus meets the requirements of Grid Rule 201.14 for disability. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 201.14. The Court disagrees.

The Medical-Vocational Guidelines (Guidelines), commonly known as "the grid" (found at 20 C.F.R. § Pt. 404, Subpt. P, App. 2), are "a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (citations omitted). They "relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). "The grids come into play at step five of the analysis, where 'the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience.'" *Phillips*, 671 F.3d at 702 (citing *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). Generally speaking, when a decision "cannot be evaluated on medical considerations alone," a claimant can be evaluated under the grid. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 200.00(a). Under the Guidelines, if a claimant is unable to perform past relevant work, has no transferrable skills, is over 50 years old, and is at the sedentary exertional level, the claimant is presumptively considered disabled. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 201.14.

In the instant case, the ALJ did not err in not finding plaintiff disabled based on the Guidelines, because although plaintiff is over 50 years old and the ALJ found she could not perform her past relevant work and had no transferrable skills, plaintiff's RFC is not limited to the sedentary exertional level. (Tr. 768.)

The ALJ found plaintiff retained the RFC to "stand and/or walk for one hour at a time up to three hours in an eight-hour workday." (Tr. 768.) Plaintiff claims that this should be interpreted to mean that plaintiff can only stand or walk for a total of three hours a day. However, at the hearing in April 2017, the ALJ clarified that she intended this to mean that plaintiff could "stand or walk for three hours each for a total of six hours" combined. (Tr. 825-26.) The ALJ further clarified in her decision that she based the RFC on the opinion of Anne Winkler, M.D., who found Plaintiff capable of standing and walking for a total of three hours *each* during an eight-hour workday. (Tr. 753, 781.) Thus, it is clear from a review of the record as a whole that the ALJ found plaintiff capable of a total of six hours of standing and walking during the workday.

This means that the ALJ found plaintiff capable of light exertional work. Under the Secretary's regulations, light work may require "a good deal of walking or standing" or it might require "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). Specifically, the full range of light work may require "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at 6. In contrast, "sedentary work" is defined as involving "a certain amount of walking and standing." 20 C.F.R. § 416.967(a). Furthermore, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at 5. Since the ALJ found that plaintiff was capable of a combined total of six hours of standing and walking, her finding that plaintiff was capable of light work was not in error. Therefore, the ALJ did not err in concluding plaintiff did not meet the Guidelines for a finding of disability.

Moreover, even if the Court were to interpret plaintiff's RFC in the way plaintiff suggests, meaning that plaintiff is limited to standing and/or walking for only a combined total of three hours in an eight-hour workday, plaintiff's argument would still fail. The ALJ did not err in finding plaintiff did not meet the Guidelines, because plaintiff's capabilities, even if limited to a combined total of only three hours, would still exceed the limits of sedentary work, and the ALJ properly relied on the testimony of a vocational

expert to determine whether a significant number of jobs exist in the national economy that plaintiff could still perform.

According to the Guidelines, "[w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 200.00(a). "In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational expert] assistance is advisable for these types of cases." SSR 83-12, 1983 WL 31253, at 3; *see also Fenton v. Apfel*, 149 F.3d 907, 910 (8th Cir. 1998) ("[t]he Secretary is required to produce vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, if his or her characteristics do not match those in the regulations, either because of suffered nonexertional impairments, or because he or she is precluded from performing a full range of a particular work classification or for any other reason."); *Oxner v. Chater*, 103 F.3d 135 (8th Cir. 1996) ("[W]here claimant's relevant characteristics differ from Medical-Vocational Guidelines, Commissioner must produce VE testimony or similar evidence to establish jobs in economy.") (citing *Mackinaw v. Bowen*, 866 F.2d 1023 (8th Cir. 1989)).

In this case, even if the ALJ did mean that plaintiff was only capable of a combined total of three hours of standing and walking, the resulting RFC would still fall somewhere between the two-hour requirement for sedentary work and the six-hour requirement for light work. 20 C.F.R. §§ 416.967(a), (b); SSR 83-10, 1983 WL 31251, at 5-6. Because even this RFC determination would not correspond exactly to the Guidelines, the ALJ properly relied on the testimony of a vocational expert as required by the relevant Social Security Ruling. SSR 83-12, 1983 WL 31253, at 3; *Fenton*, 149 F.3d

at 910; *Oxner*, 103 F.3d at 135.  Therefore, the ALJ did not err in not making a prima facie finding of disability based on the Guidelines directly.

To the extent the ALJ's RFC determination is ambiguous, this is harmless error. "To show an error was not harmless, [a plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).  *See also Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008).  In other words, "an 'arguable deficiency in opinion-writing technique' does not require [a court] to set aside an administrative finding when that deficiency had no bearing on the outcome." *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). Because the ALJ did not confine plaintiff to sedentary work, and because she properly consulted with a vocational expert at Step Five, there is no evidence that the ALJ would have decided differently absent the ambiguity.  Reversal in this regard is therefore unwarranted.

### B. Plaintiff's RFC is Supported by Substantial Evidence

Plaintiff next argues that the ALJ failed to properly consider plaintiff's diabetic neuropathy of her legs as a severe impairment at Step Two, which led to an RFC unsupported by substantial evidence.  The Court disagrees.

#### 1. The Omission of Diabetic Neuropathy at Step Two

At Step Two of the evaluation process, the ALJ must determine if a claimant suffers from a medically determinable impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(a)(4)(ii); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  The claimant bears the burden of proving her impairment or combination of impairments is severe, but the burden is not a heavy one, and any doubt concerning whether the showing has been made must be resolved in favor of the claimant.  *Id.*; *Dewald v. Astrue*, 590 F. Supp.2d 1184, 1200 (D.S.D. 2008).  "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard[.]"  *Kirby*, 500 F.3d at 707.

At Step Two in this case, the ALJ determined that plaintiff suffered from at least one severe impairment, and she continued on the sequential five-step analysis. (Tr. 764.) This distinguishes the present case from other Step Two cases in which ALJs stopped at Step Two after finding no severe impairments or only "slight abnormalities," and proceeded to deny benefits without undertaking the subsequent steps of the evaluation process. *See Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)).

The Supreme Court has characterized the plaintiff's burden at Step Two to show severe impairment as a "threshold" requirement. *See Yuckert¸* 482 U.S. at 145. *See also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) ("As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process . . . [.] Therefore, the step two determination of severity is merely a threshold requirement."). Recognizing the threshold nature of the Step Two analysis, this Court has held that a Step Two determination merely allows the ALJ to proceed with the sequential analysis. *Tarkington v. Berryhill*, No. 4:15-CV-1600 JMB, 2017 WL 976938 (E.D. Mo. Mar. 13, 2017).

Therefore, so long as the ALJ finds *any* severe impairment and moves to the next step, an erroneous failure to find an impairment severe is usually harmless. *Groberg v. Astrue*, 415 Fed.Appx. 65, 67 (10th Cir. 2011) ("An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ, as here, finds another impairment is severe and proceeds to the remaining steps of the evaluation." ); *Winn v. Commissioner of Social Sec.¸* 615 Fed. Appx. 315 (6th Cir. 2015) ("An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation.").

The Eighth Circuit has not yet expressly ruled on whether a Step Two error alone requires reversal. *See Rentzell v. Berryhill*, Case No. 4:17 CV 3037, 2018 WL 2050559, n.2 (D. Neb. May 1, 2018). In *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007), it held that a failure of the ALJ to include plaintiff's diagnosis of borderline intellectual functioning

as a severe impairment at Step Two was reversible error. *Id*, at 887. However, district courts in this circuit are split regarding whether *Nicola* requires automatic reversals if the ALJ commits any Step Two errors. *See Lund v. Colvin*, 2014 WL 1153508, 26-27 (D. Minn. Mar. 21, 2014) (reviewing and discussing cases interpreting *Nicola* that reached different conclusions). More recent cases, including ones from this Court, have tended to hold the ALJ's failure to list all the severe impairments at Step Two is harmless, so long as the ALJ adequately discusses the effects of those impairments at the subsequent steps. *See Burgess v. Berryhill*, Case No. 4:17 CV 2316 ACL, 2018 WL 4457308, at 6 (E.D. Mo. Sep. 17, 2018); *Rentzell* 2018 WL 2050559, n.2 (listing cases supporting non-automatic reversal regarding Step Two errors); *Lund*, 2014 WL 1153508 at 27 (finding that an ALJ's failure to classify all of plaintiff's impairments as "severe" was not reversible error when he had considered all of the evidence in the record and reduced plaintiff's RFC accordingly). *See also McCaskill v. Berryhill*, Case No. 4:17 CV 04121 KES, 2018 WL 2144553, at 15 (D.S.D. Apr. 20, 2018) (noting that a central theme in the cases holding for non-reversal is the requirement that the ALJ consider all of the claimant's impairments in the evaluation of the claimant's RFC).

In light of the above, this Court concludes that the ALJ's failure to expressly list all of plaintiff's severe impairments at Step Two alone does not require reversal. The Eighth Circuit's harmless error analysis hinges on whether the ALJ would have decided the case differently had the error not occurred. *Byes*, 687 F.3d at 917; *Van Vickle*, 539 F.3d at 830. Thus, even if an ALJ fails to list all severe impairments at Step Two, the outcome of the case would not change if the ALJ properly considers the effects of all impairments during subsequent steps.

Reversal in this case is not required for the ALJ's omitting plaintiff's diabetic neuropathy as a severe impairment at Step Two, because the ALJ appropriately considered that impairment during subsequent steps, as discussed below.

## 2. The ALJ Considered Plaintiff's Diabetic Neuropathy

Plaintiff argues that the ALJ's failure to list diabetic neuropathy as a severe impairment at Step Two was not harmless, but changed the outcome of the case because consideration of its effects was omitted from the ALJ's subsequent RFC analysis. The Court disagrees.

RFC is the most that a claimant can still do despite her physical or mental limitations. 20 C.F.R. § 416.945(a). A claimant's RFC is an administrative determination reserved to the Commissioner based on all relevant evidence. *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015). The ALJ should consider all relevant evidence, which includes medical records, observations of treating physicians, and the claimant's subjective statements about her limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ must consider the impairments individually and in combination in determining the claimant's RFC. *See Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005). It is proper for an ALJ to consider a claimant's daily activities when formulating the claimant's RFC. *See Green v. Astrue*, 390 F. Appx 620, 622 (8th Cir. 2010). Further, an ALJ may discredit a claimant's subjective statements if they are inconsistent with the claimant's daily activities. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009). Ultimately, the burden of persuasion to prove disability and demonstrate RFC is on the plaintiff. *Eichelberger*, 390 F.3d at 592.

First, Plaintiff contends that the ALJ's Step Two error prevented proper consideration of the combined effects of all of plaintiff's impairments. 20 C.F.R. 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.") However, to the Court's perception, the ALJ considered plaintiff's subjective complaints that related to her diabetic neuropathy: numbness, tingling, and weakness in her legs. (Tr. 769-70.) The ALJ also explicitly considered objective medical evidence related to plaintiff's diabetic neuropathy. The ALJ noted that although plaintiff had developed peripheral neuropathy, she was not seeing a neurologist for care of that condition. (Tr. 772.) The ALJ noted that Dr. Kazdan, plaintiff's primary care physician, had diagnosed plaintiff

with Type II diabetes mellitus with neurologic manifestations, particularly inflammatory and toxic neuropathy on November 13, 2009. (Tr. 282, 774.) The ALJ then noted that on December 28, 2009, Dr. Kazdan diagnosed plaintiff's inflammatory and toxic neuropathy as ongoing and prescribed new medication accordingly. (Tr. 295, 774.) The ALJ also noted that Dr. Yoon, another of plaintiff's treating physicians, attributed plaintiff's alleged numbness in her left foot to her longstanding diabetic neuropathy. (Tr. 685, 777.) The ALJ further noted that Dr. Kazdan confirmed the diagnosis of plaintiff's uncontrolled diabetes with toxic and inflammatory neuropathy. (Tr. 626, 777.) Finally, the ALJ noted the opinion of Dr. Winkler, a medical expert, who stated that plaintiff had mild peripheral neuropathy and high A1C (blood sugar and glycohemoglobin) readings. (Tr. 750, 781.) Thus, the ALJ considered evidence of plaintiff's diabetic neuropathy in determining her RFC.

Second, plaintiff argues that the ALJ did not properly distinguish the effects of her herniated disks, which caused decreased sensation on the left side in the L5 distribution, from her diabetic neuropathy, which caused "tingling and pain" that prevented her from standing or sitting for more than 20 minutes. (Tr. 814.) In support, plaintiff points to Dr. Kazdan's diagnosis of decreased sensation at both ends of her feet. (Tr. 638.) Plaintiff also cites her high A1C level as evidence that her diabetic neuropathy imposed functional restrictions on her RFC. However, plaintiff fails to explain how a diagnosis of "decreased sensations at ends of the bilateral feet" and her high A1C levels could cause the alleged debilitating pain. As stated above, the burden of persuasion regarding plaintiff's RFC limitations remains on the plaintiff. *Eichelberger*, 390 F.3d at 592. The Eighth Circuit has pointed out that the proper inquiry in this regard is plaintiff's functional limitations, not necessarily whether there are any medical diagnoses. *See Rear v. Astrue*, Case No. CIV. 08-5023-RHB, 2008 WL 4790784, at 2 (D.S.D. Nov. 3, 2008) (citing *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990)). *See also* 20 C.F.R. 404.1545(e).

Plaintiff argues that Dr. Winkler did not differentiate the symptoms of diabetic neuropathy from symptoms from other causes, and the ALJ relied on Dr. Winkler's

opinion. However, Dr. Winkler noted that plaintiff had mild peripheral neuropathy. (Tr. 750.) Again, no evidence in the record shows plaintiff's diabetic neuropathy caused her functional limitations that were not addressed by the ALJ. Dr. Winkler's opinion is consistent with plaintiff's treating physician's diagnosis, which is that at best plaintiff's neuropathy caused decreased sensation. (Tr. 638.)

Lastly, plaintiff argues that the ALJ's failure at Step Two to properly find plaintiff's diabetic neuropathy a severe impairment prevented her from providing a function-by-function analysis on her ability to do work-related activities. Specifically, plaintiff contends that the ALJ failed to provide a logical explanation of the effects of plaintiff's diabetic neuropathy on her ability to work. SSR 96-8p, 1996 WL 374184, at 7 ("In all cases in which symptoms, such as pain, are alleged, the RFC assessment must: …[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work."). However, plaintiff bears the burden of establishing functional restrictions imposed by her diabetic neuropathy. *Eichelberger*, 390 F.3d at 592. Absent such a showing, the ALJ did not need to do more regarding an alleged symptom. Further, the ALJ adequately considered what evidence there was that related to plaintiff's diabetic neuropathy and her subjective complaints.

In summary, the undersigned concludes that the ALJ considered all of plaintiff's impairments in determining her RFC. The ALJ did not commit reversible error at Step Two by not finding plaintiff's peripheral neuropathy severe. The ALJ's RFC assessment is supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

      /s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 26, 2019.